UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

WILLIAM DAWUN EDWARDS,

        Petitioner,

v.

WILLIS CHAPMAN,

        Respondent.

_____/

Case No. 1:23-cv-730

Honorable Sally J. Berens

**OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Petitioner consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 1, PageID.14.) Section 636(c) provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c).

This case is presently before the Court for preliminary review pursuant to 28 U.S.C. § 2253 and Rule 4 of the Rules Governing § 2254 Cases. The Court is required to conduct this initial review prior to the service of the petition. Rule 4, Rules Governing § 2254 Cases.

Service of the petition on the respondent is of particular significance in defining a putative respondent's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any

procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351.

Rule 4, by requiring courts to review and even resolve the petition before service, creates a circumstance where there may only be one party to the proceeding—the petitioner. Because Respondent has not yet been served, the undersigned concludes that Respondent is not presently a party whose consent is required to permit the undersigned to conduct a preliminary review of the petition. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[1] Petitioner's consent is sufficient to permit the undersigned to conduct the Rule 4 review.

The Court conducts a preliminary review of the petition under Rule 4 to determine whether "it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (discussing

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

that a district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436–37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

## Discussion

### I.     Factual Allegations

Petitioner William Dawun Edwards is incarcerated with the Michigan Department of Corrections at the Macomb Correctional Facility (MRF) in New Haven, Macomb County, Michigan. Following a jury trial in the Berrien County Circuit Court, Petitioner was convicted of one count of second-degree murder, in violation of Mich. Comp. Laws § 750.317, two counts of possession of a firearm during the commission of a felony (felony-firearm), in violation of Mich. Comp. Laws § 750.227b, one count of being a felon in possession of a firearm, in violation of Mich. Comp. Laws § 750.224f, and one count of carrying a concealed weapon, in violation of Mich. Comp. Laws § 750.227. The trial court subsequently sentenced Petitioner as a fourth offense habitual offender, pursuant to Mich. Comp. Laws § 769.12, to 70 to 120 years' imprisonment for second degree murder; two years' imprisonment for each felony-firearm conviction; and 6 to 40 years' imprisonment for the felon in possession and carrying a concealed weapon convictions. *See People v. Edwards*, No. 351389, 2021 WL 5750691, at *1 (Mich. Ct. App. Dec. 2, 2021).

The Michigan Court of Appeals described the facts underlying Petitioner's convictions as follows:

> [Petitioner's] convictions arise from his murder of the victim, Novena Mathis, his "on and off" girlfriend of nearly 25 years and the mother of his two children, Dasha Mathis and Daquan Edwards in Benton Harbor, Michigan. When Dasha reached her early teen years, she alleged that [Petitioner] sexually abused her when she was

five years old. As a result of the allegations, Dasha went to live with her maternal grandparents.

At the time of her death, the victim lived with [Petitioner] and Daquan, and the couple had a volatile relationship with allegations of domestic violence committed by both parties. Recently, on her cellular telephone, the victim reportedly recorded [Petitioner] engaged in drug sales. She purportedly advised [Petitioner] of the recordings and warned him that if he assaulted her, she would turn the videos over to the police.

The victim had recently agreed to allow Dasha, now grown and a mother of two young children, to move into her home. On the night of the victim's death, Dasha was in the process of bringing her children and her stuff into the victim's home. [Petitioner] was present, became upset that Dasha and her family were moving in, and asked the victim to drive him to a nearby apartment complex. The victim agreed, but did not promptly return home or respond to her family's telephone calls and texts. Eventually, [Petitioner] answered his telephone and gave conflicting answers about the health and welfare of the victim.

Unbeknownst to the family, [Petitioner] apparently argued with the victim in the car and shot her in the face. [Petitioner] pushed the victim into the passenger seat of her vehicle. He called his friend Marvin Phillips and had Phillips drive his own car and follow the victim's car to a nearby apartment complex. [Petitioner] apparently attempted to hide the victim's vehicle and her body in the back of the complex near a dumpster. Phillips claimed to have no knowledge of the victim's death and thought that [Petitioner] was angry with the victim and merely sought to hide her vehicle as revenge. [Petitioner] later asked Phillips to drive him to Kalamazoo where [Petitioner's] mother, Lenora Holliday, was staying at a hotel room. After [Petitioner] arrived at the hotel room, he struck Holliday with his gun, and Holliday stabbed [Petitioner] with scissors. Holliday called the police and was arrested for domestic violence. [Petitioner] was hospitalized for the cut to his arm, but then arrested for his domestic violence upon Holliday in Kalamazoo.

In response to the missing person's report filed by the victim's family, Benton Harbor Public Safety officers were able to locate the victim's body following interviews with family and friends, including Phillips who led the police to the location of her vehicle and body. Police went to interview [Petitioner] in Kalamazoo. He initially was not forthcoming about details of the victim's death and posited that she committed suicide. However, after the police noted that the couple had a history of domestic violence, including that the victim had assaulted [Petitioner] with a small hatchet, [Petitioner] claimed that the shooting of the victim was committed in self-defense. He presented evidence that the victim had assaulted other people. Nonetheless, the jury rejected this theory, and [Petitioner] was convicted of second-degree murder and the weapon offenses.

*Id.* at *1–2.

Prior to trial, the prosecution filed a notice to admit evidence of other acts, specifically, the allegations Dasha made that Petitioner had sexually abused her as a child. *Id.* at *2. The trial court held a hearing on the matter, and ultimately concluded that the "evidence had probative value, was not unfairly prejudicial, and was admissible." *Id.* Petitioner then filed an interlocutory appeal challenging the trial court's order. *See People v. Edwards*, 935 N.W.2d 419, 421 (Mich. Ct. App. 2019). The Michigan Court of Appeals affirmed the trial court's ruling, concluding that the evidence would "likely would be prejudicial to [Petitioner], but the evidence's probative value respecting his motive for the shooting—an issue about which [Petitioner] and the prosecution disagreed vehemently—[was] not substantially outweighed by the danger of unfair prejudice." *Id.* at 427.

Following sentencing, Petitioner appealed, alleging that: (1) the trial court improperly admitted the other-acts evidence consisting of accusations of sexual abuse; (2) the trial court improperly admitted evidence that the victim had recorded Petitioner engaged in drug dealing on her cell phone; and (3) the trial court improperly denied him the right to allocute before imposing sentence. *Edwards*, 2021 WL 5750691, at *2–7. The Michigan Court of Appeals affirmed Petitioner's convictions and sentences on December 2, 2021. *Id.* at *1. Petitioner then filed an application for leave to appeal to the Michigan Supreme Court. *See People v. Edwards*, 978 N.W.2d 824 (Mich. 2022). Ultimately, the supreme court denied Petitioner's application for leave to appeal on September 6, 2022. *Id.*

On July 7, 2023, Petitioner filed the present habeas corpus petition, raising three grounds for relief, as follows:

> I.    In this homicide case, [Petitioner was] denied a fair trial by irrelevant other-acts evidence showing he allegedly sexually assaulted his daughter, thus encouraging the jury to convict him for reasons of bias, sympathy, anger, or shock[.]

5

> II. [Petitioner] was denied his essential Sixth Amendment right to confront the witnesses against him when the trial court admitted into evidence Ms. Mathis['s] out-of-court statements concerning recording [Petitioner] sel[ling] drugs[.] Was [Petitioner] also denied his due process right to a fair trial where the erroneous forfeiture by wrongdoing ruling opened the door to otherwise inadmissible other acts evidence?
>
> III. Does due process require resentencing where the trial court pronounced sentence without affording [Petitioner] an opportunity to allocute?

(Pet., ECF No. 1, PageID.3.)

**II.     AEDPA Standard**

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (internal quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal

6

law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011)

(en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of Section 2254(d) are satisfied, and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

### III. Discussion

#### A. Ground I—Admission of Other Acts Evidence

As his first ground for relief, Petitioner contends that he was denied a fair trial because of the admission of "irrelevant other-acts evidence showing he allegedly sexually assaulted his daughter, thus encouraging the jury to convict him for reasons of bias, sympathy, anger, or shock[.]" (Pet., ECF No. 1, PageID.3.)

As set forth above, Petitioner appealed the trial court's pretrial ruling regarding the admission of this evidence to the Michigan Court of Appeals in an interlocutory appeal. The court of appeals rejected Petitioner's argument, concluding that the evidence concerning the alleged sexual assaults would be properly admitted under state law because the prosecution intended to introduce this evidence to "prove [Petitioner's] motive for the homicide, which is an acceptable purpose." *Edwards*, 935 N.W.2d at 427. Petitioner challenged the admission of this evidence again on direct appeal, and the court of appeals rejected his argument, concluding that the court was bound by the law of the case doctrine. *Edwards*, 2021 WL 5750691, at *2–5.

The extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a). As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of a federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Id.* at 67–68. Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68. Thus, to the extent that Petitioner asserts that the state courts erred under Michigan law, he fails to state a claim upon which habeas relief may be granted. State courts are the final arbiters of state law, and the federal courts will not intervene in such matters. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

It is not inconceivable, however, that evidence properly admitted under state law might still have the effect of rendering Petitioner's trial unfair. State court evidentiary rulings, though, "cannot rise to the level of due process violations unless they offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (internal quotation marks omitted); *accord Coleman v.*

*Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). This approach affords the state courts wide latitude for ruling on evidentiary matters. *Seymour*, 224 F.3d at 552.

Moreover, under the AEDPA, a federal court may not grant relief if it would have decided the evidentiary question differently. A federal court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law, or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000); *see also Stewart v. Winn*, 967 F.3d 534, 538 (6th Cir. 2020) (stating that, to obtain habeas relief based on an allegedly improper evidentiary ruling, a petitioner must identify "'a Supreme Court case establishing a due process right with regard to the specific kind of evidence' at issue").

Here, Petitioner fails to identify any clearly established Supreme Court precedent that would preclude admission of the evidence at issue. *Burger v. Woods*, 515 F. App'x 507, 510 (6th Cir. 2013) (concluding that "[t]he kind of foundational unfairness and arbitrariness needed to show that a flawed state court evidentiary ruling rises to the level of a due process violation is not a broad category, and the Supreme Court . . . has never identified an improper-character-evidence case that falls into it"). Likewise, there is no clearly established Supreme Court precedent that holds that a state court violates the Due Process Clause by permitting propensity evidence in the form of "other bad acts" evidence. In *Estelle*, the Supreme Court declined to hold that the admission of prior acts evidence violated due process. *Estelle*, 502 U.S. at 75. The Court stated in a footnote that, because it need not reach the issue, it expressed no opinion as to whether a state law would violate due process if it permitted the use of prior crimes evidence to show propensity

10

to commit a charged crime. *Id.* at 75 n.5. While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997), and *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms. *See Kelly v. McKee*, No. 16-1572, 2017 WL 2831019, at *2 (6th Cir. Jan. 24, 2017) (agreeing that the trial court did not err by admitting evidence of other acts to support motive because there "is no Supreme Court precedent precluding 'other acts' evidence on constitutional grounds"); *see also Bugh*, 329 F.3d at 512 (noting that "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence").

Because Petitioner has failed to demonstrate that the court of appeals' rejection of this claim is contrary to, or an unreasonable application of, clearly established federal law, Petitioner is not entitled to relief on habeas ground I.

**B.    Ground II—Confrontation Clause and Admission of Evidence Regarding Drug Dealing**

As his second ground for relief, Petitioner argues that his rights under the Sixth Amendment's Confrontation Clause were violated when the trial court admitted the victim's "out-of-court statements concerning recording [Petitioner] sell[ing] drugs." (Pet., ECF No. 1, PageID.3.) Petitioner further contends that the conclusion that this evidence was admissible under the forfeiture by wrongdoing exception violated his due process rights because it "opened the door to otherwise inadmissible other acts evidence." (*Id.*)

On direct appeal, the court of appeals rejected Petitioner's argument that the evidence was not admissible under Michigan Rule of Evidence 804(b)(6), "the codification of the doctrine of forfeiture by wrongdoing." *Edwards*, 2021 WL 5750691, at *5. In making that decision, the court of appeals noted that the forfeiture by wrongdoing doctrine is not only an exception to the hearsay

11

rule, but also constitutes an exception to an individual's Sixth Amendment right to confrontation. *Id.* Specifically, with respect to the trial court's decision to admit the evidence at issue, the court of appeals stated:

> . . . [W]e reject [Petitioner's] challenge to the admission of the evidence that the victim reportedly recorded [Petitioner] engaged in drug transactions and conveyed that information to her father and Daquan. First, the fact that the trial court made a preliminary finding of fact regarding admissibility of the evidence did not violate [Petitioner's] rights; there is a distinction between a preliminary question of admission and the ultimate determination of guilty beyond a reasonable doubt by the jury. Additionally, [Petitioner's] contention that the evidence could only be used in a drug prosecution is also without merit. The *Burns* Court noted that when there are existing charges, the analysis of defendant's intent to discourage a witness's testimony is easier. Nonetheless, the plain language of MRE 804(b)(6) provides that a statement is not excluded as hearsay if the declarant is unavailable and the statement is offered against a party that has engaged in wrongdoing intended to procure the unavailability of the witness. The plain language of the rule of evidence addresses when the evidence is admissible and contains no prohibition on the type of litigation in which the statement may be admitted.
>
> Finally, to admit this evidence, the prosecutor had to show by a preponderance of the evidence that [Petitioner] engaged in wrongdoing, the wrongdoing was intended to procure the declarant's unavailability, and the wrongdoing did procure the unavailability. In the present case, [Petitioner] was taken to a hospital and then into custody because of an incident of domestic violence with Holliday. While [Petitioner] was in Kalamazoo, the victim's body was discovered. Consequently, when [Petitioner] was interviewed and declined to make a statement, the interviewing detectives volunteered that they were aware of the couple's volatile relationship. At that time, [Petitioner] disclosed that he shot the victim in the face (engaged in wrongdoing) and this wrongdoing did procure the victim's unavailability. It should be noted that [Petitioner] attempted to negate the intent requirement, that the wrongdoing was intended to procure the declarant's unavailability, by claiming that he acted in self-defense. However, [Petitioner] also disclosed that he was angry with the victim because she had advised that she recorded his drug deals and moved Dasha into the couple's home which necessarily meant that [Petitioner] had to leave because he refused to live with Dasha in light of prior allegations of sexual abuse. Thus, [Petitioner] provided both positive and negative evidence of his intent to eliminate the victim. Under the circumstances, [Petitioner's] challenge to the admission of this evidence under MRE 804(b)(6) is without merit.
>
> [Petitioner's] alternative contention that the drug dealing constituted improper MRE 404(b) evidence is also without merit. First, the evidence was not challenged on this basis in the trial court, and [Petitioner] failed to demonstrate plain error affecting his substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d

> 130 (1999). The evidence was offered to show motive and to negate [Petitioner's] state of mind that he acted in self-defense. Furthermore, [Petitioner] only challenges the evidence offered by the victim's father and Daquan, and he does not contest the cumulative testimony offered by Dasha and the victim's sister. Thus, this argument fails.

*Edwards*, 2021 WL 5750691, at *6.

As an initial matter, any challenge by Petitioner that the court of appeals erroneously concluded that the evidence in question was admissible under Rule 804(b)(6) of the Michigan Rules of Evidence is not cognizable on federal habeas review. As noted above, "it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Estelle*, 502 U.S. at 67–68. The court of appeals' conclusion that the evidence in question was admissible pursuant to the state evidentiary rules—particularly, the state's codification of the forfeiture by wrongdoing doctrine—is binding on this Court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). Thus, any part of the court of appeals' determination that is based on the state rules of evidence is axiomatically correct.

Furthermore, the court of appeals' conclusion that the evidence was properly admitted under the forfeiture by wrongdoing doctrine effectively extinguishes Petitioner's Confrontation Clause argument. The Sixth Amendment's Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. Thus, generally, "[t]estimonial statements of witnesses absent from trial [may be] admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Crawford v. Washington*, 541 U.S. 36, 59 (2004). The *Crawford* Court, however, stated that the forfeiture by wrongdoing doctrine "extinguishes

13

confrontation [clause] claims . . . ." *Id.* at 62. Under this doctrine, "one who obtains the absence of a witness by wrongdoing forfeits the constitutional right to confrontation." *Davis v. Washington*, 547 U.S. 813, 833 (2006); *see also Reynolds v. United States*, 98 U.S. 145, 158 (1878) (noting that the forfeiture by wrongdoing doctrine allows the introduction of a testimonial statement by an unavailable witness if the preponderance of the evidence shows that the "witness is absent by [the defendant's] own wrongful procurement"). Thus, "[t]he pertinent Supreme Court authority . . . clearly establishes that the forfeiture-by-wrongdoing doctrine applies where there has been affirmative action on the part of the defendant that produces the desired result, non-appearance by a prospective witness against him in a criminal case." *Carlson v. Att'y Gen. of Cal.*, 791 F.3d 1003, 1010 (9th Cir. 2015).

Petitioner claims that the state court of appeals made an "erroneous forfeiture by wrongdoing ruling" (Pet., ECF No. 1, PageID.3), but he offers no indication as to the nature of the error. As noted above, as a matter of state law, the appellate court's application of Michigan Rule of Evidence 804(b)(6) is axiomatically correct. The Supreme Court has concluded that forfeiture-by-wrongdoing "extinguishes" confrontation rights regarding the out-of-court statements by the victim of the wrongdoing. The Supreme Court has recognized that Federal Rule of Evidence 804(b)(6) "codifies the forfeiture doctrine." *Giles v. California*, 554 U.S. 353, 359 (2008). And the Supreme Court has recognized further that the state codification of the doctrine in Michigan Rule of Evidence 804(b)(6), despite minor differences in wording, has the same requirements as the federal codification. *Id.* at 368 n.2.

Moreover, Petitioner cannot contest the critical facts upon which the court of appeals' determination depends. Petitioner acknowledged that he shot the victim. *Edwards*, 2021 WL 5750691, at *6. Petitioner disclosed that he was angry with the victim because she told him she

14

recorded his drug deals. *Id.* The jury specifically rejected the only other "intent" offered by Petitioner—self-defense—leaving an otherwise unexplained intentional shooting. The natural consequence of Petitioner's action was to render the victim incapable of reporting his crimes. It is certainly no surprise that "people usually intend the natural consequences of their actions," *Reno v. Bossier Parish School Bd.*, 520 U.S. 471, 487 (1997), even if that fact is not the proper subject of a mandatory legal presumption, *Sandstrom v. Montana*, 442 U.S. 510, 522–24 (1979).

Petitioner has failed to identify any way in which the court of appeals' forfeiture-by-wrongdoing determination is contrary to, or an unreasonable application of, clearly established federal law. And Petitioner has failed to suggest that the state court's determination was based on an unreasonable determination of the facts. Accordingly, Petitioner is not entitled to habeas relief on his Confrontation Clause claim.

Petitioner's statement of this claim also suggests that the admission of the out-of-court statements might have been wrongful because the statements related to additional "other acts." Any claim that this "other acts" evidence violated due process lacks merit. As discussed *supra*, the court of appeals' conclusion that such evidence was admissible under Rule 404(b) of the Michigan Rules of Evidence is binding upon this Court. Furthermore, as stated above, Petitioner has not shown that the court of appeals' ruling regarding the "other acts" evidence was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders*, 221 F.3d at 860.

For all of the reasons set forth above, Petitioner is not entitled to relief on habeas ground II.

### C. Ground III—Allocution at Sentencing

As his last ground for relief, Petitioner suggests that due process requires "resentencing where the trial court pronounced sentence without affording [Petitioner] an opportunity to allocute." (Pet., ECF No. 1, PageID.3.)

On direct appeal, the Michigan Court of Appeals rejected Petitioner's argument, concluding that pursuant to state law, Petitioner was not deprived of the opportunity to allocute before the trial court pronounced sentence. *Edwards*, 2021 WL 5750691, at *7–11. To the extent that Petitioner contends that the court of appeals misapplied state law, such a challenge is not cognizable on federal habeas review for the same reasons discussed above. *See Bradshaw*, 546 U.S. at 76.

In any event, state law defines the absolute boundary of Petitioner's right to allocution because "[t]here is no constitutional right to allocution under the United States Constitution." *Pasquarille v. United States*, 130 F.3d 1220, 1223 (6th Cir. 1997); *see also Hill v. United States*, 368 U.S. 424, 428 (1962) (concluding that "[t]he failure of a trial court to ask a defendant represented by an attorney whether he has anything to say before sentence is imposed is not of itself an error of the character or magnitude cognizable under a writ of habeas corpus"). Therefore, Petitioner's claim that he was not afforded the right to allocution is not cognizable on federal habeas review. *See United States v. Vujovic*, 635 F. App'x 265, 272 (6th Cir. 2015); *Scrivner v. Tansy*, 68 F.3d 1234, 1240 (10th Cir. 1995). Accordingly, Petitioner is not entitled to relief on habeas ground III.

### IV. Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that jurists of reason could . . . conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

**Conclusion**

The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability.

Dated:    August 22, 2023              /s/ Sally J. Berens
                                       SALLY J. BERENS
                                       United States Magistrate Judge